IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

AT MILWAUKEE

ANTONIO MARQUES SMITH,
                    Plaintiff,


        **v.**                                    Case NO._____

SCOTT ECKSTEIN, STEVE SCHUELER,
JOHN KIND, JAY VAN LANEN, CAPTAIN
CUSHING, LIEUTENANT KOEHLER,LIEUTENANT
RETZLAFF, SERGEANT DUPONT, SERGEANT FRIDEL,
SERGEANT ROZMARYNOSKI, OFFICERS BONIS, GOMM,
JOHNSON, DIEDRICK, MEYERS, GULLEY, BOWMAN,
RETZLAFF, MCDONOUGH, YANG, NURSE PRACTIONER
SUSAN PETERS, NURSE JEAN LUTSEY, NURSE KATHY
LEMENS, UNKNOWN JOHN AND JANE DOES, ADMINISTRATORS,
OF WI-DOC,ET. AL.,

                    DEFENDANT(s).

---

CIVIL RIGHTS COMPLAINT
42 U.S.C. s. 1983

---

NOW COMES, the plaintiff Antonio Marques Smith, by and through
himself, **pro se** , and with assistance of a certified Inmate Legal
Paralegal, and as, and for a complaint and against all herein
named defendants:

## I. NATURE OF THE CASE

1. Plaintiff Antonio Marques Smith brings this claim under
Title 42 U.S.C. s. 1983, alleging he has been subjected to excessive
force, in violation of the Eighth and Fourteenth Amendments;
Retaliation in violation of his First Amendment Freedom; denial
of

Equal Protection and Due Process under the Fourteenth Amendment, subjected to Deliberate Indifference and Unwanton and Intentional Infliction of Pain, under the Eighth Amendment, and Cruel and Or Unusual Punishment, placing his life in danger while in their custody and care. Plaintiff seeks those damages as available to him under the previously mentioned statues of the United States Constitution.

## II. JURISDICTION AND VENUE

2. This court has jurisdiction over the claims alleged herein under 28 U.S.C. ss 1331 and 1343.

3. Venue is appropriate in the Eastern District of Wisconsin under the venue provision of 42 U.S.C. 1983, in that the actions about which the plaintiff complains took place in the State of Wisconsin, under 28 U.S.C., Section 1391 (b)(2) because it is where the matter complained of occurred.

## III. PARTIES

4. The Plaintiff Antonio M. Smith, is an adult resident of the State of Wisconsin, and currently incarcerated at the Green Bay Correctional Institution, (GBCI) located at 2833 River- side Drive, P.O.Box 19033, Green Bay, Wisconsin 54307-9033.

5. Scott Eckstein, is the Warden of Green Bay Correctional Institution, located at 2833 Riverside Drive, in the Village of Allouez, County of Brown, Green Bay, Wisconsin 54307. He is as warden, legally responsible for the care, safety, health, of all inmates confined therein, as well for the operation of

the institution (GBCI) and rules and policies of the institution.

6. Steve Schueler, is employed with the Wisconsin Department of Corrections, as Deputy Warden at the Green Bay Correctional Institution, and at all times relevant, responsible for the care, custody, safety, and health of all inmates confined therein, and in second command of the institution.

7. Jay Van Lanen is employed by the State of Wisconsin Department of Corrections, as a supervisor II of the Green Bay Correctional Institution, (GBCI), at all times relevant to the actions described herein, as such, responsible for the care, safety, custody and health of all inmates so confined at (GBCI), and was the Unit Manager of the Restrictive Secure Housing Unit (RSHU).

8. John Kind, is employed with the State of Wisconsin Department of Corrections, as Security Director of Green Bay Correctional Institution (GBCI), and is third in command of the institution, at all times relevant to this action, and such, responsible for the care, custody, safety, health of all inmates confined at GBCI, and also responsible for the training of staff and correctional officers at Green Bay Correctional Institution (GBCI).

9. Jean Lutsey, is employed byt he State of Wisconsin, Department of Corrections/Bureau Health Service as a Registered Nurse of the Green Bay Correctional Institution (GBCI) and as such, Unit Manager of Health Service Unit (HSU), and is respons-

ible for the daily management of the Nursing staff, and ensuring that the inmate population at the institution are being met healthwise to the mandates of the constitution.

10. Susan Peters, is employed with the Wisconsin Department of Corrections/Bureau Health Service as a Nurse Practitioner/Primary Care Provider for the Green Bay Correctional Institution, and is responsible for providing medical care to those inmates confined at GBCI as primary care provider, at all times relevant to this action, as described herein.

11. Kathy Lemens, is employed by the State of Wisconsin Department of Corrections/Bureau Health Service (DOC/BHS) as a Registered Nurse at the Green Bay Correctional Institution, and is responsible for providing healthcare to inmates confined at Green Bay Correctional Institution, at all times relevant to the actions described herein.

12. Capt. Cushings is employed with the Wisconsin Department of Corrections, as a supervisor II, and is responsible for the care, custody, safety, and health, all inmates confined therein, as well for the supervision of correctional officers and enforcing the rules and regulations of the institution.

13. Capt. Stevens is employed by the State of Wisconsin, Department of Corrections, as a supervisor II, and responsible for the care, safety, custody, health of inmates confined therein and enforcement of policies, and regulations of the institution and is chief investigator of the institution, and was at all

times relevant herein.

14. Defendant Koehler, is employed with the Wisconsin Department of Corrections, as a supervisor I, at the Green Bay Correctional Institution, and as such, responsible for the care, custody, health and safety of the inmates confined therein, and enforcing rules and regulations of the institution, at all times relevant herein.

15. Defendants Gomm, Yang, Meyers, Deidrick, Johnson, Gulley Bonis, Bowman are employed by the State of Wisconsin Department of Corrections, as Correctional Officers, and responsible for the care, custody, health and safety of all inmates confined therein, at all times relevant herein, at the Green Bay Correctional Institution (GBCI).

16. Tracy Rozmarynoski, is an employee of the State of Wisconsin Department of Corrections, as a correctional sergeant and as such, responsible for the care, custody, safety and health of all inmates confined therein, at the Green Bay Correctional Institution, (GBCI).

17. Jane and John Doe administrator are employed by the State of Wisconsin, Department of Corrections as administrators of the D.O.C, and responsible for the care, custody, health and safety of all inmates confined with the department of corrections, at all times relevant as described herein, and works out the D.O.C headquarters in Madison.

IV. FACTS

18. Plaintiff Antonio M. Smith, is and has been at all times relevant incarcerated in the Wisconsin Department of Corrections, having been returned to the DOC on revocation, and returned to the Green Bay Correctional Institution (GBCI), approximately, late 2016, early 2017 having been transferred from Waupun Correctional Institution (WCI) to GBCI.

19. On October 6, 2017, the Plaintiff, Antonio Smith, put GBCI's Health Service Unit on notice that he would be going on a hunger strike protest.

20. On October 10, 2017, Plaintiff was seen by RN Kathy Lemens, for an evaluation per D.A.I. Policy #300.00.57. The Plaintiff refused to be evaluated by Lemens, which included laboratory blood work, vitals, weight, and its plaintiff's right to refuse any and all medical treatments.

21. RN. Lemens began questioning the Plaintiff regarding his reasoning behind the refusal to eat ("Hunger Strike"), to wit, Plaintiff Smith informed her, he was peacefully protesting the conditions of his confinement in the Restrictive Secure Housing Unit, and how solitary confinement are being utilized against certain inmates who are the targets of this administration, the behavioral modification program and tactics that are currently in use, and how the mentally ill inmates are going untreated.

22. On October 11, 2017, Officers approached Plaintiff Smith's assigned cell, #519 of the Restrictive Housing Unit,

(i.e., Solitary Confinement"), and requested that Plaintiff
be handcuffed and be taken to the nurses station for an eval-
uation. Plaintiff refused, stating that he did not wish to be
evaluated or receive any form of treatment by Health Service
Nurses. The officers left Plaintiff's assigned cell, only to
return a short while later, stating: "We been directed to inform
you, that if you refuse to be seen by the nurse, security will
use physical force to gain compliance from you."

23. Under the threat of physical force, Plaintiff came
out to be seen by the nurse ("Kathy Lemens"), and did refuse
medical treatment and evaluation, and thus, returned to his
assigned solitary confinement cell.

24. From October 11, 2017 thru November 22, 2017, Plaintiff
Smith was taken to the nurses station daily, always under the
veil of a physical force threat, that would be used against
Plaintiff, should he refuse to be seen.

25. On November 24 and 25, 2017, respectively, Officers
came to Smith's assigned cell, cell #235 in the Restrictive
Secure Housing Unit (RSHU), commonly known as "Solitary Confine-
ment" directing that Plaintiff be handcuffed and taken to the
nurses station to be evaluated. Plaintiff Smith refused.

26. Sgt. Fridel, came to the Plaintiff's assigned cell
after being informed by officers that the plaintiff refused
to be taken to the nurses station. Sgt. Fridel did ask Plaintiff
"why are you refusing?" the Plaintiff responded, the "Hunger

Strike" policy and DAI (Division of Adult Institutions) policy that governs medical treatment and evaluation do not state that inmates must be seen by health service for any reason unless there is an active court order for involuntary evaluation and treatment.

27. This was not and is not a security issue, but an health service issue, and to use physical force against my person, just to get me before a nurse, would violate not only the policy but my constitutional rights, and I shouldn't have to endure being threatened daily with physical force to come out to see the nurse, which has ingratiated on my emotional and mental stability."

28. Sgt. Fridel stated: "let me speak with my supervisor, and I'll be right back." Sgt. Fridel did return moments later, and stated he and Lieutenant Koeller both reviewed the policy and there "are no court order" actively in place for involuntary evaluation, so, we are not using force to take you before the nurse. Sgt. Fridel stated he in fact, informed the nurses that they could very easily walk to Plaintiff's assigned cell and get the same refusal to be evaluated from there."

29. On both days of November 23, and 24, 2017, nurses did come to Plaintiff's assigned cell where he, yet, once again refused to be medically evaluated.

30. On November 25, 2017 a nurse did appear to Plaintiff's assigned cell asking if he wanted to be evaluated, to wit, Plain-

tiff responded, "No."

31. At approximately 12:10 P.M., Capt. Cushing did appear
at Smith's assigned cell and stated "What I am about to say,
and do is bull shit, but let me explain what happened. The nurse
called her supervisor (Jean Lutsey) at home to complain that
security is not forcing Smith ("Plaintiff") to be seen. The
Nurse supervisor (Jean Lutsey), then called Cushings supervisor
at home John Kind, ("Security Director") who in kind, called
the institution and gave plaintiff an "Order" through someone
else, to use force if necessary on Plaintiff to get him in front
of the nurse.

32. Capt. Cushings states that he looked over all the poli-
cies with Lt. Koeller, and Sgt. Fridel, and it appears you do
have a right to refuse to be seen by HSU (Health Service Unit)
for any reason without having to come out of your cell, to do
so, and that I ("Capt. Cushing") read security director Kind
the policy, and yet, he still ordered me to get you out by force
if necessary.

33. Capt. Cushing's stated he had two options, violate
Plaintiff's rights and the DAI Policy & Procedure, then be sued,
as the money will come from the state, not him, plus he'll get
a few days off to testify in court. Or he could refuse his super-
visors orders and get fired. That he wasn't trying to lose his
job. Asking Plaintiff where would he file? Milwaukee, the Eastern
or Western District in Madison.

34. Capt. Cushing acknowledged that there were no court order, but stated, "those damn nurses and my supervisors are forcing my hands, and I hope that you understand." "But, I will not take the fall, so, sue and I'll testify to the truth of the matter."

35. Plaintiff Smith, responded: "You know that I am not about to fight with y'all. I am going to lie face down on my mattress with my hands behind my back, legs crossed at the ankles in a total submissive position. This is unbelievable, and I need it documented." Capt. Cushing stated, "don't worry Smith, it will be well documented on camera and within our incident reports."

36. Correctional Officers Gomm, Yang, McDonough, Bowman and Capt. Cushing all entered the cell to use physical force on Smith, while Johnson video recorded the entire incident. Plaintiff was placed in a 6-point restraint chair, and pushed to the nurses station. Plaintiff Smith, remained silent while in the nurses station and was subsequently returned to my assigned cell.

37. On November 26, 2017 at approximately 9:00 a.m., Cushing did appear at Plaintiff's assigned cell #235 in the Restrictive Secure Housing Unit, (i.e., solitary confinement) with Officers Deidrick, Yang, McDonough, Sgt. Fridel, and Strean.

38. Plaintiff Smith was forcefully removed from his assigned cell while handcuffed behind his back, and leg restraints, and

strapped in a 6-point restraint chair, and taken to the nurses station.

39. Plaintiff refused to communicate with the nurses as he did not want to be evaluated, which had already been established. Plaintiff was then returned to his assigned cell. Sgt. Fridel video recorded the entire incident and everyone involved wrote incident reports.

40. On November 27, 2017 at approximately 10:30 a.m., Capt. Van Lanen, Officers Deidrick, Bonis, McDonough, Gulley, and all unknown John Doe officers appeared at Plaintiff's assigned cell, #235.

41. All herein named defendants partook in applying physical force upon Smith, as he was handcuffed, applying pressure down on his wrist, placed in leg restraints, which were placed tightly around his legs, and strapped him into a restraint chair, then taken to the nurses station, where once again, plaintiff refused to communicate with the nurses, to wit he was subsequently returned to his assigned cell.

42. Approximately 15-minutes after plaintiff was returned to his assigned cell, Capt. Van Lanen, came to his cell and stated:"dude, I totaly understand your position, and rights. They need to get that court order, but, HSU (Health Service Unit) is making this a security issue when it really has nothing to do with security. Right or wrong, "I gotta' do what I gotta' do."

**43.** On November 28, 2017, Captain Van Lanen and officers Bonis, Gulley, Deidrick, Meyers, and an unknown John Doe officer all approached the plaintiff assigned cell #235. The plaintiff was reading a book while sitting on the cell mattress. When the Plaintiff heard Captain Van Lanen at the cell door he immediately set his book down and laid face down, placed his hands behind his back and crossed his legs in a total submissive posture/position the same as he done on November 25,26, and 27th, 2017.

**44.** Captain Van Lanen acknowledged that he had spoken with the nurses and was made aware that the plaintiff was asthnatic, and that incapacitating agents was a trigger for the plaintiff asthma. Captain Van Lanen stated that if the plaintiff did not voluntarily come to the cell door and place his hands out the cell door trap to be cuffed and taken to the nurses station for an evaluation that he would spray the plaintiff with **GAS i.e INCAPACITATING AGENTS.**

**45.** The plaintiff stated to Captain Van Lanen that he has a right to refuse to be seen by the nurse from his assigned cell in the RSHU (Restrictive Secure Housing Unit) and that he will remain in his submissive position on the cell matterss and exercise his right to refuse.

**46.** Under the direction of Captain Van Lanen the plaintiff cell door trap was opened by officers' and a burst of **GAS i.e INCAPACITATING AGENTS** was released into the plaintiff cell.

-12-

**47.** Never once did the plaintiff show any signs of aggression towards staff, nor does the plaintiff have a violent history of assultive behavior towards inmates, officers, or administrators.

**48.** After the **INCAPACITATING AGENTS** was released into the plaintiff assigned cell, the plaintiff suffered an asthmatic attact for approximately 2-**5** minutes. The plaintiff felt as if he would die as he could not inhale without feeling great pain.

**49.** Officers witnessed the plaintiff suffering great pain and refused to come to the plaintiff assistance instead choosing to yell at the plaintiff from outside the cell for the plaintiff to remove all of his clothing, and perform a strip serach i.e stand before the officer while in the cell in the nude, run fingers through his hair, lift up his penis and testicals, turn around facing away from the officer and raise his feet one at a time, then bending over at the waist, spreading his buttocks and coughing. The plaintiff was also forced to stick his fingers into his mouth and run them along the inter parts of his jaw all while having the **CHEMICAL GAS** on his fingers and coughing uncontrolably.

**50.** The plaintiff was then ordered to put his hands out of the cell door trap where he was placed into handcuffs to wit was placed so tightly that the pressure cut off the plaintiff circulation of blood to his hands.

**51.** When the cell door was opened, the plaintiff was ordered out while tather to the cell door. The plaintiff was forced to the floor onto his knees while in the nude. Officers then placed in leg restraints and forced back onto his feet.

**52.** The plaintiff was then ordered by Captain Van Lanen to stand up from the floor as the plaintiff was forced onto his knees when exiting his assigned cell, and walk down the 200 wing hallway to the nurses' station for an evaluation against his will while in the nude. The plaintiff believe that it shall be noted that he passed approximately twenty (20) cells with inmates looking out their cell door windows at the plaintiff as he passed by in the nude. The plaintiff believe that it shall also be noted that Captain Van Lanen stated to the plaintiff "We like to walk y'all out in the open while naked in hopes that being exposed in such away will discourage behavior that we don't like. Being naked infront of people is very embarrassing isn't it?" the plaintiff did feel very embarrassed, dehumanized, and degraded/humiliated.

**53.** The plaintiff was unable to walk down the long hallway unassisted as he was weak from a 52 day hunger strike, with infrequent intake of fluids in protest of long-term solitary confinement, and the abuse inmated experienced at the hands of officers, security supervisors, and the Wisconsin D.O.C as a whole. The plaintiff legs and arms was numb from the tightness of the leg restraints placed on his ankles and handcuffs on his wrist, did make it very difficult for the plaintiff to walk. Captain Van Lanen ordered Officer Deidrick and Meyers to use tactical force upon the plaintiff because he was unable to walk in the manner to wit Captain Van Lanen wanted. The tactical force included Officer Deidrick placing the plaintiff into a choke hold from behind while both officer (Deidrick and Meyers) twisted the plaintiffs' hands until it felt as if they would snap. The plaintiff did yell out in pain behind the unnecessary and excessive force.

54. The plaintiff was dragged walked to the nurses' station where the plaintiff verbally stated to Nurse Practitioner **Susan Peters**, that he (the plaintiff **SMITH**) refuse all medical treatment which included any form of an evaluation, and did not want to be touched as was my right.

55. The plaintiff head remained in a downward position while informing Nurse **Susan Peters**, that he did not wish to receive any medical treatment or to be evaluated. The plaintiff heard Captain Van Lanen state to Nurse Susan Peters "Do you want me to force his head up?" to wit nurse Susan Peters stated "Yes".

56. The plaintiff was then placed into a choke hold by officer Gulley, forcing the plaintiff head to go backward to wit caused the plaintiff great unnecessary pain. The plaintiff yelled out "Don't touch me. I don't want to be evaluated nor receive any medical treatment. This is my right, and there is no court order for involuntary evaluation and treatment."

57. Nurse Susan Peters, did disregard the plaintiffs' verbal refusal to receive any and all forms of medical treatment to wit included an evaluation and proceeded to roughly stick an object into the plaintiffs' nasals which did cause the plaintiff a great deal of pain.

58. The plaintiff was then dragged walked to cell #306 which is an observation cell designed for inmates who are deemed suicidal. This observation cell light switch is on the outside of the cell controlled by officers as the light remained turned on bright. The cell does not have an emergency call botton/speaker

**59.** The plaintiff was placed in this cell nude, with no mattress, pillow, blanket, bedding, tissue, hygine products, a security blanket or **smock**, both of which are given to suicidal inmates, and those inmates who are placed on control sergregation status from being disruptive also recive a security blanket and **smock**. The plantiff was placed on control status under Wisconsin Administrative **dode** 303.74 controlled separation. (1) USE. "A security supervisor may order into controlled separation any inmate in sergregated status who exhibits disruptive, destructive, or out of control behavior...When the inmate's behavior is no longer disruptive, destructive, or out of control, a security supervisor shall remove the inmate from controlled separation... (2) CONDITIONS. **(a)** The institution shall provide inmates in controlled status all of the following: (1) **CLEAN MATTRESS. (2) SUFFICIENT LIGHT BY WHICH TO READ AT LEAST 12 HOURS PER DAY. (3) SANITARY TOILET AND SINK. (4) ADEQUATE VENTILATION AND HEATING. (5) CLOTHING CONSISTENT WITH THE LEVEL OF RISK. (6) ESSENTIAL HYGIENE SUPPLIES.(7) NUTRITIONALLY ADEQUATE MEALS.**

    **60.** Lieutenant **Retzlaff,** did conduct a wellness security round at approximately 3:30 P.M and stated the following"**I tried taking you off controlled status, but they wouldn't allow me**" when the plaintiff asked who is **"They"** Lt. Retzaff stated **"Van Lnen".**

    **61.** The plaintiff asked Lt. Retzaff "Why were I left naked in control status when I have done nothing wrong to warrant such placement, other than exercise my right to peacefully protest the conditions of my confinement by engaging in a hunger strike, and refusing medical treatment?" Lt. Retzaff responded **"You're not out of control, disruptive, or destructive, and never should've**

been placed on **controlled separation.**" The plaintiff than
asked if he could have some clothing, a mattress, hygiene supplies,
bedding, and some cleaning supplies because the cell was dirty
with blood stains from the last inmate housed in the cell had
attempted suicide by cutting himself." Lt. Retzaff responded
**"Captain Van Lanen told me not to give you any clothing. He has
two bars and I have one (two bars represent a Captain and one
bar represent a Lieutenant) and this is his unit (i.e. Restrictive
Secure Housing Unit.)"** The plaintiff stated "I'm cold. Its winter,
and y'all know that these sergregation cell vents blow out cold
air in the winter months and hot air in the summer months." Lt.Retzaff
responded **" Let me go speak with Captain Van Lanen, and see what
I can do for you, because you really don't deserve all of this.
You're one of a very few inmates who don't yell, bang, disrespect
us, and do all of that suicidal stuff."** It shall be noted that
Lt. Retzaff did not return, and the plaintiff remained nude.

62. From the moment the plaintiff was placed into the observation
cell #306 in the nude, countless number of inmates, male and
female officers/employees walked passed cell #306 viewing the
plaintiff completely nude. It shall be noted that the cell door
to cell #306 is made of clear hard plastic glass material which
allow anyone passing by easy viewing access into the entire cell.

63. The plaintiff was taunted by inmates unmercifully
with homophobic slurs, which was due to plantiff's nudity. Many
of these inmates made degrading, derogatory jokes and comments
in relation to the plaintiff's genitals and anus as officers
laughed on and encouraged the jokes to continue.

**64.** The plaintiff remained in the nude under the previously described conditions for **24 hours.** The plaintiff was unable to sleep as he had no mattress, bedding, and clothing. Due to this indcident occurring in the winter (November) the plaintiff was extremely cold as there were cold air blowing from the vent inside the cell. The plaintiff was also in much pain from two choke holds applied to the plaintiff's neck, along with leg restraints and handcuffs cutting off the plaintiff's blood circulation. The cell light is controlled by the officers from outside of the cell, and the **bright** light remained on.

**65.** The next day November 29, 2017 Captain Van Lanen approached the plaintiff assigned cell #306 at approximately 8:00 A.M., with a very laege can of incapaciting agents'(chemical gas), and stated to the plaintiff, **"Smith, now if you refuse to see the nurse this morning, I will spray you, and if I spray you while you're naked, your ass and genitals will be on fire, and you know that I'll use it on ya' too. I've sprayed afew guys thats on this wing with you while they were naked, ask them how it felt. One way or another, I'm going to break you, and you'll end this hunger strike, its been almost two months. My supervisors are on my ass, and their supervisors are on their asses. The hunger strike you all did at Waupun last year won't work here at Green Bay."**

**66.** Due to Captain Van Lanen's continuous pattern of using violent tactics of physical force against the plaintiff and other inmates who does not display any signs of violence, the plaintiff did willingly exit the cell to be seen by the nurse as the pain from the physical unnecessary use of force applied

the previous day, and under Captain Van Lanen's **veil threat**
of addictional force. The plaintiff was provided with clothing
prior to exiting his assigned cell. Captain Van Lanen did follow
close behind the plaintiff stating **"long, rough night huh? pretty
cold right?" mockingly.**

**67.** On November 30, 2017 the plaintiff was being escorted
from his assigned cell #306 to the Restrictive Secure housing
Unit nurses' station by Officer **Bowman.** Due to the plaintiff's
pain from the november 28, 2017 unneeessary use of excessive
force, and his prolonged hunger strike and dehydration, the plaintiff's
legs could not support his weight, and he fell to the floor.

**68.** Within an hour of the plaintiff falling to the floor,
he was taken off grounds to St. Vincent Hospital, where he continued
to exercise his right to refusal of medical treatment, and to
be evaluated. The plaintiff was subsequently returned to the
prison (Green Bay Correctional Institution).

**69.** Upon plaintiff's return to the prison, he was placed
in **leg restraints, handcuffs in a rip-belt, and put into a wheelchair
where he was restrained to the wheelchair metal bars.**

**70. RN Kathy LEMENS** stated: "We're going to take your
weight" plaintiff responded, "No, I don't want to be evaluated!
you don't have a court order for imvoluntary evaluation, and
you already know that I have a right to refuse." **RN KATHY LEMENS
responded** " **I got permission from Madison, so, Van Lanen he's
all yours."** The plaintiff yelled out " **Madison don't possess
the authority to violate my rights. I am of sound mind, and don't
want to have any forms of an evaluation which include my weight
being taken."**

71. **Steve Schueler-Deputy Warden,** did inform Inmate Complaint Examiner Mr. **Degroot**, after the plaintiff filed an Inmate Complaint, that it was a **"Multi-disciplinary decision to take inmate SMITH weight."**

72. **Captain Swiekatowski,** informed the plaintiff that **Deputy Warden Steve Schueler's " Multi-disciplinary decision"** statement means that serval heads of department within Green Bay Correctional Institution and possibly, the DEPARTMENT in Madison (W.D.O.C-headquarters) got together, and discussed an issue thus, making a **"Multi-disciplinary decision".** These referenced heads of the departments' here at Green Bay Correctional Institution include but not limited to **"Jean Lutsey-Health Service Unit Manager, John Kind-Security Director, Scott Eckstien-Warden, Steve Schueler-Deputy Warden, Captain Jay Van Lanen-Restrictive Secure Housing Unit Manager, Dr. Steve Schmit-Psychological Services Unit Supervisor, Kathy Lemens-RN Head Nurse of the Restrictive Secure Housing Unit, and whomever else from "Madison"-W.D.O.C headquarters.** All of the above possessed first hand knowledge that there was no active court order for **involuntary Evaluation i.e. taking the plaintiff's weight against his will/objections.**

73. **Captain Van Lanen,** leaned close to the plaintiff's ear and stated **"Don't make me used force on you Smitty(mockingly) you know I'll do it. Strip you naked again, and this time it'll last longer than a day."** The plaintiff requested that a video recorder be present to document his objection to being **evaluated. Sgt. Rozmarynoski,** activated a hand held recorder, recording the entire incident.

**74. Sgt. Rozmarynoski,** documented the incident while the
plaintiff were pushed onto an industrialized scale, and he was
**medically evaluated**, and over his objection. **Sgt. Rozmarynoski**
stated to the plaintiff " **They really fucked up with this one
smith. My memory is good, and i won't lie for them either."**
The plaintiff asked " **Why you didn't speak up and do whatever
you could to prevent my rights from being violated since you
knew that what they were doing was wrong?"** Sgt. Rozmarynoski
**responded " Some times it take someone like you who will fight
this administration the right way in order to bring about change,
versus me trying to stand up for you guys, and likely lose my
job."** Sgt. Rozmarynoski done nothing to prevent the violation
and silently acquiesced in everything which transpired, essentially,
helping/assisting in the cover-up the violations.

**75.** On December 1, 2017, **Wisconsin Department Of Corrections**
filed a petition with **Brown County Circuit Court requesting a
temporary order for involuntary Evaluation, Feeding and Hydration
pending** a hearing for a permanent order. **The Honorable Marc
A. Hammer of Brown County Circuit Court, did grant the Wisconsin
D.O.C their petition for a temporary order. The temporary order
was served upon the plaintiff by Captain Swiekatowski, on December
1, 2017. A hearing was scheduled in the matter for January 23, 2018.**

**76.** On December 2, 2017 plaintiff received an approved
adult conduct report for the November 28, 2017 incident where
incapaciting agents i.e Chemical Gas and the unnecessary excessive
force was used upon the plaintiff. **Security Director John Kind
did approve for the force to be used on the plaintiff, than approved
this adult conduct report to proceed.**

77. The plaintiff was being retaliated against by Captain Van Lanen, Sercurity Director John Kind, when they both accused the plaintiff of violating DOC 303.28 Disobeying Orders (knowing ahead of time that the order was indeed unlawful) and DOC 303.33 Disruptive Conduct (knowing that the plaintiff was in his assigned cell, and lawfully exercising his rights to peacefully protest the conditions of his confinement by engaging in a hunger strike and refusing all medical treatment , which included being medically evaluated.)

78. Officer Bonis informed the plaintiff, that Captain Van Lanen directed him to write the adult conduct report from the November 28, 2017 incident, where Officer bonis was team leader on the extraction team. It shall be noted that Captain Van Lanen is Officer Bonis direct supervisor. Officer Bonis informed the plaintiff that his direct supervisor Captain Van Lanen, ordered him to write in the adult conduct report that they were all at the plaintiff's assigned cell #235 on November 28, 2017 when incapaciting agents was used that the purpose was to search the plaintiff's cell. Officer Bonis stated "Dude, everyone know that we were there to take you to see the nurse, and not to search your cell. They messed up by using that gas on you when you were not doing anything wrong. In the use of force policy, incapaciting agents can be used when an inmate refuses a cell search, and thats why Van Lanen ordered me to write that lie into the ticket (adult conduct report). You know how to fight them with your intelligence so, do what you gotta' do." The plaintiff responded "If you knew that what you were writing was indeed a lie, than why did you write it? You do realize that you violated your

State of Wisconsin Work Rules for employees, and very possibly the law when you intentionally, and knowingly provided false information?" (Wis. Stats **Ch.111** Wis. Stats **Ch.230; WI adm. code employment relations; WI Human Resources Handbook Chapter 410; DOC Executive Directives; WI DOC Human Resources Policies.** When an employee does any of the following, they are in direct violation of: **"#1. Falsification of records, Knowingly permitting, Encouraging others to do so. Failing to provide truthful, accurate and complete information when required. #2. Failure to comply with written agency policies or procedures. #17. Making False, inaccurate or malicious statements about another person or the employer. #21. Failure to comply with the provisions of the state code of ethics.)"** Officer Bonis replied **"The only thing that I could say right now to you SMITH, is that I was directed by my supervisor to write what was written. When I'm questioned about what I wrote, thats exactly what I'm going to state, because everyone who was here that day, we all know why we were at your cell which was to escort you to see the nurse, and use force to get you there, and not because of no damn cell search. A cell search was never mentioned until I was directed to write the ticket (Adult Conduct Report) by Van Lanen,"**

79. On November 12, 2017, a Full Due Process Hearing was conducted in regards to the November 28, 2017 incident where incapacitating agents was used on the plaintiff, and an Adult Conduct Report was written by Office Bonis.

The plaintiff requested Officer Bonis, DeiDrick, and Meyers as witnesses to attend the hearing. Officer Bonis did not appear in person but, did provide a written statement, however, the plaintiff was not able to ask Officer Bonis any specific questions related to the incident.

80. Officers DeiDrick and Meyers, both admitted to the following at the December 12, 2017 Full Due Process Hearing: "We were at inmate SMITH's cell on November 28, 2017 especifically, to escort him to the nurses station for an evaluation due to his hunger strike, and there was never any mention of a cell search by anyone prior to us showing up at inmate SMITH's cell. If we were at inmate SMITH's cell for a cell search refusal, when we droned up the supervisor would've stated that fact on camera before we entered the wing leading to SMITH's cell." Both officers stated "Whenever we're ordered to inmate SMITH's cell, its in relations to his hunger strike, and we have never had any issues with SMITH that would warrant any amount of force to be used on him." Both officers admitted when asked if other inmates housed in the Restictive Secure Housing Unit, are able/allowed to refuse to be seen by the nurse without coming out of their cells, and without being forced to come out of their cells, both officers stated "Yes, when other inmates refuse to be seen by the nurses, they (nurses) come to the inmate cell and ask them to sign a refusal form." Officers DeiDrick and Meyers, both stated "When we approached inmate SMITH's cell, he immediately layed on his stomach, placed his hands behind his back, crossed his leg at the ankles, and turned his face towards the closet wall as he done so on the three previous cell extractions in a total submissive and non-aggressive position, and he did not exhibit any sings of aggression prior to the gas being sprayed into the cell."

81. Video footage from the November 28, 2017 was also evidence at the December 12, 2017 Full Due Process Hearing for the hearing officers' review, all of which proved that the force used against the plaintiff was excessive inasmuch, that the force was unnecessary as further demonstrated and supported by two officers verbal testimony at the Full Due Process Hearing, both of whom was present at said incident. **Lt. Larson stated to the plaintiff "I won't make a decision today on the conduct report. I want to consult with my supervisor (Captain Van Lanen and Security director John Kind). You'll receive a copy of my decision in the mail. The plaintiff was found GUILTY of all violations 303.28 Disobeying Orders and 303.33 Disruptive Conduct.**

82. One day after the November 28, 2017 incident where the incapacitating agents was used on the plaintiff, Officer **GOMM** did inform the plaintiff that his property remained in cell **#235** untouched. Thus, no one searched the plaintiff's cell. The plaintiff's cell (#235) where he was removed from along with his property was not touched by any officers until November 29, 2017 when **Officer Peterbaugh** packed the plaintiff's property into boxes. All of the above testimony from officers, video footage of the incidents related to excessive and unnecessary force does in fact support the plaintiff's claim that Captain Van Lanen, Security Director John Kind, and Officer Bonis conspired against the plaintiff when they lied about the purpose of the use of incapacitating agents and force used on the plaintiff.

-25-

83. On December 7, 2017 the plaintiff was asleep in his assigned cell #617 when he was awaken by Captain Van Lanen, who stated "What is about to take place is not my decision. My supervisor made the decision to strap you down (full body mechanical restraints). The Nurse Practioner Susan Peters informed us that you need two I.V bags for your dehydration, and it will take five (5) hours for each bag. So the decision was made by my supervisor to have you strapped down for the ten (10) hours in the     restraint bed."  The plaintiff stated " I have never refused medical treatment nor an evaluation when there is a court order for involuntary medical treatment, which include evaluation, feeding and Hydration. The December 1, 2017 court order took or suspended my rights to refuse so, I comply. I've been forced fed and hydrated before at Waupun as you already know and I've never resisted. This is nothing more than another one of y'all never ending tactics used to break my peaceful protest."  Captain Van Lanen replied "SMITH, I've never known us to take these steps but, as I stated, this is not my decision. I just want to know if you will come out or do we have to use force to get you into the restraint bed? whether its right or wrong, I'm going to follow my supervisors directives."

84. The plaintiff requested that the entire incident be recorded, so that he had an opportunity to voice his objections. A hand held recorder was present when the plaintiff placed his hands out of the cell door trap to be handcuffed. The cell door was opened and the plaintiff exited the cell and went to his knees as directed so that Officers were able to place leg  restraints on his ankles.

85. The plaintiff informed Captain Van Lanen on camera, that to use Full Body Immobilizing Mechanical Restraints on me as a means to enforce the involuntary treatment court order when I am not refusing, will violate my rights guaranteed to me under the Eight (8) and fourteenth (14) amendments of the United States Constitution as the court order is a Commitment that does infringes on my rights. You all need to consult with legal counsel before strapping me down. Tell your legal counsel to review Youngberg v. Romeo and Lilly v. Wis. DOC because you all is about to violate me. And your supervisor does not possess the authority to strap me down especially, when its for a medical or psychological need." The plaintiff forewarning was recorded on video.

86. The plaintiff's forewarning, and pleas went ignored as he was escorted to a cell where he was placed on a bed and restraints was placed on both ankles, arms, and chest.

87. Psychologist Dr. Amy Zirbel, did conduct an interview with the plaintiff as he was being placed into the full body restraints. Dr. Zirbel stated"This is not coming from the psychological department. We're not in agreement with this placement, and I've never known of an inmate being strapped down for this purpose. The use of Mechanical Restraints policy is pretty clear, so I really don't know what to tell you Mr. Smith. You're not trying to harm staff, another inmate, or yourself, so it just doesn't make much sense to us at all. Is there anything you want to say, and I'll write it in my notes?" The plaintiff stated that what was happening did violate his rights to be free of full bodily immobilizing restraints, and the he felt dehumanized, humiliated, and degraded.

88. RN Kathy Lemens, did enter the cell as the plaintiff was being placed into the full body immobilizing restraints and did state "SMITH, I know that you are very upset right now, and if i were in your position so would I. But, I just want you to know that this decision to strap you down like this was not made by HSU (Health Service Unit). Its out of our control." The plaintiff believe that it shall be noted that the use of Mechanical immobilizing restraints was not that of a Professional Judgement (Psychological nor Medical professional).

89. On January 23, 2018 at 1:30 P.M before the Honorable Judge Mark A Hammer, in Brown County Circuit Court/100 Jefferson Street/ Green Bay, WI/ Re: State Of Wisconsin Department Of Corrections v. Antonio M. Smith, Case No. 17-CV-1576 a hearing was held in regards to a request/petition from Wisconsin DOC for a permanent order for Involuntary Evaluation, Feeding and Hydration. The plaintiff objected to the Wis. DOC petition and requested that if the court did grant the Wis. DOC their petition that it be written in the order that Security cannot make the determination to use immobilizing restraints as their action were to punish the plaintiff, and discourage the plaintiff from continuing his hunger strike, and such actions taken on December 7, 2018 when Security used Full Body "6 point" immobilizing restraints did infact violate my Eight (8) amendment right to be free from Cruel and Unusal Punishment, and my fourteenth (14) amendment right under the Due process Clause for a prisoner to be free from full bodily restraints.

-28-

90. Nurse Practioner Susan PETERS, who was/is the plaintiff's Primary Care Provider and gave/subscribed the two I.V orders did testify under oath at the evidentiary hearing before Judge Mark A. Hammer, admitted that she did not make the determination that the plaintiff needed to be placed in full body immobilizing restraints or any forms of restraints in order to receive the treatment of the I.V bags. NP PETERS, did admit that she learned of the plaintiff being placed into the immobilizing full body restraints the following week when she was evaluating the plaintiff, and he asked if she had prior knowledge that her order for two I.V bags would consist of the plaintiff being placed into full body restraints and the witness NP PETERS stated "No. she did not have any knowledge of the restraints being used, and never would've made such a determination unless you (the Plaintiff) was refusing treatment." NP PETERS further testified that the plaintiff records did not reflect that he had ever refused medical treatment when there is an active court order for involuntary evaluation, Feeding and Hydration. And that the plaintiff have always allowed himself to be medically evaluated from the very first day that the court granted the tempoary involuntary evaluation order dated december 1, 2017. NP PETERS admitted that she had nothing to do with the taking of the plaintiff's weight on November 30, 2017 as she was aware that there was not yet an order from the courts for involuntary evaluation.

91. Psychologist Dr. AMY ZIRBEL, did provide under oath testimony at the January 23, 2018 evidentiary hearing before The Honorable Judge Mark A. Hammer. Dr. Zirbel stated " I never known the restraint bed to be used for the purpose it was used on Mr. SMITH (plaintiff). The decision to place Mr. SMITH (plaintiff) in the restraint bed was not a decision from my department (i.e. Psychological Services Unit). Mr. SMITH, was not resisting treatment, and did not pose an immediated threat of physical harm to Staff, another inmate, or himself. Mr. Smith have no history of self-harm."

92. Captain Jay Van Lanen, did provide under oath testimony at the Junary 23, 2018 evidentary hearing before The Honorable Judge Mark A. Hammer, and admitted that he has known the plaintiff for over ten (10) years, and the plaintiff have no history of violence against Officers/Staff, and or Inmates. Captain Van Lanen admitted the plaintiff had not refused to be evaluated or medically treated since the involuntary evaluation, Treatment-Feeding and hydration order was granted.

93. Captain William  SWIEKATOWSKI, did testify under oath at the Jaunary 23, 2018 evidentiary hearing before The Honorable Judge Mark A. Hammer, and admitted that he has been employed at the prison (Green Bay Correctional Institution) since 1996 and have never known of an incident where an inmate was strapped down in order to ;administer' I.V bags. Captain Swiekatowski admitted to knowing the plaintiff since around 2001 (his first incarceration) and the plaintiff does not have an assultive history against Officers/Staff nor inmates, and the plaintiff did not refuse medical treatment on December 7, 2017

94. Deputy Warden-Steve SCHUELER, did provide under oath testimony before The Honorable Judge Mark A. Hammer, at the January 23, 2018 evidentiary hearing , and admitted he was the person who made the decision to use immobilizing restraints on the plaintiff on December 7, 2017. Deputy Warden SCHUELER admitted that he is considered apart of Security, and did not receive nor consulted with a Professional in the Medical or Psychological field prior to making said decision. Deputy Warden Mr. SCHUELER admitted that he took the plaintiff's CASE and SENTENCED STRUCTURE under consideration when he decided to use immobilizing restraints on the plaintiff. Deputy Warden Mr. SCHUELER, did admit that he was fully aware of the plaintiff's engaging in a strike and being under an involuntary treatment order prior to his transfer to green Bay Correctional Institution while he was housed at Waupun Correctional Institution, and that he (Mr. SCHUELER) had no information about the plaintiff ever refusing medical treatment when there were an active court order for involuntary treatment. Deputy Warden Mr. SCHUELER admitted to having a complete understanding of adm. code 306.11 which govern the use of Mechanical Restraints, and the adm. code 306.11 was provided to Mr. SCHUELER on the witness stand as he read out loud the adm. code to wit state: DOC 306.11 "Use of mechanical restraints to immobilizin inmates. (1) Staff may use mechanical restraints to immobilize/confine inmates only with the express authorization of the shift supervisor and only in the following circumstances: (a) To protect staff, and inmates froman inmate who poses an immediate risk of physical injury to others unless restrained.

(b) To protect an inmate who poses an immediate threat of
physical injury to self unless restrained. and (c) To protect
property." Deputy Warden Mr. SCHUELER admitted to having no information
that I posed an immediate threat of physical injury to Staff,
another inmate, or to myself, and that I was not destorying any
property at the time he made said decision and that he had no
information that the plaintiff have ever destoryed any property.
Deputy Warden SCHUELER, did admit that he had read my entire
file, and he had no knowledge that the plaintiff ever assulted
Staff or inmate. Deputy Warden Mr. SCHUELER, did admit and articulated
his knowledge of the differences between an adm. code, from an
institution policy, from the law. All of which demonstrate that
Deputy Warden Mr. SCHUELER completely understood his actions
prior to issuing the order to use Mechanical Restraints on the
plaintiff, and the plaintiff have NO DOUBT that Mr. SCHUELER's
decision to use Mechanical Restraints was indeed PUNITIVE serving
the effect to discourage and to break the plaintiff from his
non-violent and peaceful protest of the conditions of his confinement
by engaging in a hunger strike.

95. The Honorable Judge Mark A. Hammer, did make a judgement
that the plaintiff's United States Constitutional Rights were
violated when he was subjected to the Mechanical Restraints for
purposes unjustifible under the courts order for involuntary
treatment. The court expressed disdain and concern behind the
Deputy Warden's testimony when he cited the plaintiff's case
and sentence as a factor when making a decision to use the Mechanical
Restraints. The court decided to put very especific language that

absent of a PROFESSIONAL JUDGEMENT, no one from SECURITY
is allowed to make a determination to use MECHANICAL RESTRAINTS
on the plaintiff (SMITH) under the color of the courts order
for involuntary EVALUATION, FEEDING AND HYDRATION order. The
court was clear in his determination that the plaintiff's rights
were indeed violated under the EIGHT and FOURTEENTH amendments
of the UNITED STATES CONSTITUTION.

96. The plaintiff have reviewed his medical file, and
have concluded that his suspicion was correct, that NP PETERS
subscribing two I.V Bags was unnecessary, and was consistent
with tactics that are used by Wisconsin DOC to break inmates
from their peaceful protest of engaging in hunger strikes. The
plaintiff have been treated for Dehydration and Malnutrition
deriving from his hunger strikes, and have become knowledgable
in reading/interperting his laboratory results. The plaintiff
will be able to prove that NP PETERS prescribing the two I.V
Bags to last five (5) each was medically unnecessary, and deliberately
prescribed to serve another purpose other than to render necessary
medical attention/treatment.

97. The Plaintiff suffered from the result of being completely
immobilized in "6 Point" Restraints for ten (10) hours, which
the sufferance included mental as well physical pain. Plaintiff
continue to experience panic attacts, depression, Hyper-reactivity
and Hyper-Susceptibility to stimuli, Sleep problems with re-occurring
nightmares, uncontrolable mood-swings that range from onsets
of crying spells, and then anger all of which the plaintiff never
experienced prior to the use of immobilizing restraints on December
7, 2017.

98. The plaintiff continue to experience harassement and retailation from security which include Captain Jay Van Lanen, Security Director John Kind, Deputy Warden Steve Schueler, Warden Scott Eckstein and serval unknown John Does at the time of filing, when in the month of Feburary 2018, Sergeant Dupont and Officer Retzlaff, were directed by Captain Van Lanen to violate the plaintiff's legal formated material located on discs/CD's/DVD's.

99. Sergeant DuPont and Officer Retzlaff both stated that it was Captain Van lanen who gave them the directives to review the plaintiff's legal material outside of his presence which does violate adm. code 309.04(3) / policy governing inmates legal material. Sergeant DuPont and Officer Retzlaff, confirmed that they both opened over "66" compacts DVD's/CD's filled with the plaintiff's very sensitive legal material, and knew that their actions were in violation of policy/the inmate rights.

100. The plaintiff legal digitally formated legal material, was confiscated by Captain Van Lanen and security Director Jhon Kind. The plaintiff is actively appealing his conviction/in preparation of appealing his conviction and does need the confiscated legal material. As is Wis. DOC policy, inmates are allowed to maintain possession of their digitally formated legal material at least until the inmates' first post-conviction appeal has been exhausted. The plaintiff has a claim against Green Bay Correctional Institution staff which include but, is not limited to Warden Eckstein, Deputy Warden Schueler, Security Director John Kind, Captain Christopher STEVENS, Captain Ryan Baumann, and John Does/Jane Does., et. al Case No.17-CV-667 before the Honorable Judge Pamela PEPPER, UNITED STATES DISTRICT COURT IN MILWAUKEE, WISCONSIN regarding the plaintiff's

legally protected privileged mail between the plaintiff and
his trial defense attorney being opened, read, and copied outside
of the plaintiff's presence and without his knowledge, then subsequently,
e-mailed to the lead prosecutor in the plaintiff's criminal case
**prior** to the plaintiff's Febuary 2017 Jury Trial out of MILWAUKEE
COUNTY. And yet, these Green Bay Correctional Institution DEFENDANTS
continue to interject themselves into the plaintiff's ongoing
criminal matters, as evident by sergeant DePont and Officer Retzlaff
both, reviewing/analyzing indepth the plaintiff's digitally formatted
legal material without his knowledge and outside of his presence
in the month of febuary 2018, under the direct orders of their
supervisor, and with the knowledge that their action violated
policy and the plaintiff's rights. To compound their actions
of illegally anayzing and reviewing the Plaintiff's legal material
on/in the month of febuary 2018, Green Bay Corr. Inst. staff
did make direct contact with ADA Karl P. HAYES again making inquiries
regarding the plaintiff's criminal case and legal material, to
which consisted of the plaintiff's post-Conviction Appeal, and
the chances of the plaintiff receiving a new jury trial.

101. The plaintiff does have himself an appellate attorney
however, the plaintiff does reserve the right to participate
in all aspects of his legal matters without fear of having his
ability to participate in his legal proceedings interferred with,
and the plaintiff does need his legal material in order to assist
with preparing for his post-conviction appeal. The plaintiff's
ability to prepare his appeal has been imeped upon by the actions
of Green Bay Correctional Institution staff as outlined above.

The plaintiff did make contact via correspondence with both, Kathy A. Jess-SECRETARY Of WI-DOC and Scott Eckstein-Warden, seeking intervention to which was supported in LAW and even the DEPARTMENTS' own policy and procedures, however, the plaintiff's and his appellate attorney serval attempts at resolving the issue was disregarded as the plaintiff's digitally formatted legal material was mailed out of the Institution against his objections but, only after the legal material related to the plaintiff's ongoing criminal case was violated during an indepth review/analyzation by Sergeant DuPont, Officer Retzlaff, Captain Van Lanen, and Security Director John Kind.

102. Plaintiff have contacted Warden Eckstein seeking intervention on all related constitutional violations cited in this $1983 civil rights complaint before most ever did occur. However, Warden Eckstein have never carried out his duties to intervene and prevent plaintiff's rights from being violated, and have acted as co-conspirator.

## EXHAUSTION OF WI-DOC REMEDIES

103. Plaintiff(SMITH) has properly exhausted all of his WI-DOC remedies as required by law through filing grievances related to every incident raised within his $1983 Civil Rights Complaint using the inmate complaint in the ICRS (Inmate Complaintiff Review System), and did appeal to the CCE (Corrections Complaint Examiner), and received responses on all complaints from the OOC (Office Of Secretary).

RELIEF WANTED

104. All herein named defendants are being sued in their
Individual, Official, and personal capacity. The Plaintiff seeks
compensatory/puntive damages against all defendants.

103. Plaintiff seeks an award of damages in the amount of
$1,000,000 dollars, sum same and sure against Jay Van Lanen,
for his disregard of plaintiff's (SMITH) right guaranteed under
U.S Constitutional Fourth amendment when plaintiff had his digitally
formatted legal material seized, and searched. First amendment
right to peacefully protest the conditions of his confinement
without actions being taken to suppress plaintiff's views and
opinions. Eight amendment right to be free from Excessive force,
Cruel and or unusual punishment, as well Deliberate Indifference
when defendant Jay Van Lanen, used excessive force on plaintiff
on November 27th and 28th, 2017 (removing plaintiff from his
assigned cell and placing him full body "6 point" restraint chair.
Using Incapaciting Agents on plaintiff. Stripping the plaintiff
of his clothing, forcing him to be nude infront of male and female
staff,as well as, inmates, then placing plaintiff in a cold,
unsanitary cell without a mattress, bedding, Hygene supplies,
and in the nude for 24 hours. Placing plaintiff in Full Body
Immobilizing restraints for 10 hours on december 7, 2017. Retaliating
against plaintiff when directing officer Bonis to fraudulently
fabricate a conduct report/records.) Fourteenth amendment under
Equal Protection Clause and Due Process when defendant Jay Van Lanen
subjected plaintiff to "6 point" immobilizing mechanical restraints
on dates November 27, 2017 and again on December 7, 2017.
Confining plaintiff to a wheelchair and taking his weight 11-30-2017.

104. Plaintiff seeks an award of damages in the amount of
$1,000,000 dollars, sum same and sure against Steve Schueler,
for violating plaintiff's first amendment right to freedom of
expression by protesting the conditions of his confinement peacefully
without reproach or any forms of suppression. Eight amendment
right to be free from Cruel and or unusual punishment, and Deliberate
Indifference when the defendant Schueler ordered that plaintiff
be placed into full body immobilizing mechanical restraints on
December 7, 2017 subjecting plaintiff to physical and mental
pain. And creating/enforcing policies that does not effect all
inmates who are in same or similar situation. Placing plaintiff
into a wheelchair in mechanical restraints and taking his weight
against his will and without have a involuntary evaluation court
order on November 30, 2017. Failure to intervene when knowing
that the plaintiff's rights was being violated and conspiring
to violate the plaintiff's rights. Fourteenth amendment under
Equal Protection Clause and Due Process when plaintiff was subjected
to Mechanical restraints on November 30, 2017 and again on December
7, 2017.

105. Plaintiff seeks an award of damages in the amount of
$1,000,000 dollars, sum same and sure against defendant John
Kind for violating plaintiff's fourth amendment right to be free
from search and seizure of his digitally formatted legal materials.
First amendment right to freedom of expression to peacefully
protest against the conditions of his confinement, and use of
long-term solitary confinement without reproach and suppression
of his ability to do so. Eight amendment right to be free from
Cruel and or unusual punishment, excessive force, and deliberate
Indifference when the defendant failed to intervene and directed

defendants Captain Cushing and Captain Van Lanen both, to
use unnecessary and excessive force against plaintiff when he
was lawfully exercising his rights on dates November 25th, 26th,
27th, and 28th, 2017. For enforcing and or creating institution
policy that allowed inmates who are in the same or similar situation
to be treated differently as all other inmates who are housed
in the Restrictive Secure Housing Unit are allowed to refuse
from their cells to be seen by Nurses/Doctors without being subjected
to physical force and threats of physical force, but yet, plaintiff
was not allowed to be treated the same, and refuse from his cell.
Fourteenth amendment when defendant John Kind, did direct Captain
Cushing and Captain Van Lanen both, to place plaintiff into full
body immobilizing mechanical restraints on dates Novemeber
25th, 26th, and 27th, 2017 even after Captain Cushing read from
DOC policy to Security Director John Kind, on November 25, 2017
that inmates does possess the right not to be seen by HSU (Health
Services Unit) staff without being physically forced to do so
absent of a court order, as well that the situation was not a
Security issue but, it was a Health Service issue. The plaintiff
is a prisoner to a Wisconsin prison and does reserve the right
to be free of full body immobilizing restraints for purposes
of punishment in order to discourage behavior that is undesirable
but yet, does not place anyone in danger of injury.

106. Plaintiff seeks an award of damages in the amount
of $1,000,000 dollars, sum same and sure against Captain CUSHING,
for violating plaintiff's rights guaranteed under the first amendment
to freedom of expression and to peacefully protest without reproach
and or suppression, and to remain free of violent attacts.

Eighth amendment right to be free from Cruel and or unusual
punishment, and Deliberate Indifference when under Captain Cushings
supervision and directives, the plaintiff was forciblly removed
from his assigned cell with excessive force, placed into a "6 Point"
restraint chair to be immobilized by mechanical restraints on dates
November 25th, and 26th, 2017 and taken to be seen by health
Services Staff against plaintiff's objections while being fully
aware that no court order for involuntary Evaluation was in place,
and knowing that his actions violated plaitiff's rights and the
DEPARTMENTS own policy. For enforcing an institution unwritten
policy that treated inmates who are in same or similarly situated
circumstances differently when other inmates who are housed in
the Restractive Secure housing Unit are allowed to refuse medical
treatment or to even be seen by Health Services Staff from their
assigned cells without being subjected to physical force/excessive
force as plaintiff was subjected to on November 25th and 26th,
2017 · Fourteenth amendment under the Equal Protection Clause
and Due Process was violated when plaintiff was subjected to
full bodily immobilizing mechanical restraint as the plaintiff
has a right to be free from immobilizing mechanical restraints
as a Wisconsin State prisoner being used on his person as means
of punishment and discouragement, and did not serve a legitimate
penaligical interest. Captain CUSHING demonstrated that he was
fully aware of plaintiff's rights being violated, but continued
in his actions anyway.

107. The plaintiff seeks an award of damages in the amount
of $1,000,000 dollars, sum same and sure against Warden Scott Eckstein
for violating plaintiff's First amendment right to freedom of

expression to peacefully protest the conditions of his confinement and the mis-use and abuse of long-term solitary confinement, as victims of long-term solitary confinement are being mentally, emotionally, and physically abused at the hands of Wisconsin DOC. Plaintiff reserved the right to be free from un-written policies created and enforced contrary to both U.S Constitution and Wisconsin Constitution as well laws, that does infringes on the plaintiff's First amendment rights. Egghth amendment right to be free from Cruel and or Unusual punishment, and Deliberated Indifference against plaintiff when creating unwritten policies that subjected plaintiff to be forciblly removed from his assigned cell for purposes of being medically evaluated over plaintiff's lawfully objections, and being complicity in the excessive and unlawful force on plaintiff's person on November 25th, 26th, 27th, and 28th, 2017 and subjecting plaintiff to immobilizing mechanical restraints on November 30, 2017 when the plaintiff was confined to a wheelchair and his weight was taken against his lawful objections to which did constitute an illegal medical evaluation. The unlawful and un-written policies consist of inmates who are engaged in a hunger strike to be forciblly removed from their cells by security without a court order for involuntary evaluation and taken to be seen by health Services Staff, knowing that such force is excessive in nature when applied. For violating plaintiff Fourteenth amendment rights guaranteed to plaintiff under the Equal Protection Clause and Due Process when plaintiff was subjected to different treatment from other inmates who were in the same or similar situation while housed in the Restrictive Secure Housing Unit. When plaintiff was subjected to full bodily

immobilizing mechanical restraints on dates November 25th, 26th, 27th and 30th, 2017 and again on December 7, 2017. Prior to the above dates and all relevant incidents described herein, plaintiff did contact Warden Scott Eckstein, seeking intervention as is his duties and responsibilities but yet, Warden Eckstein failed miserably at his duties to intervene, and operate an Institution free of a culture that is intoxicated and polluted with corruption and littered with constitutional violations that is deeply rooted into the very fabric of GREEN BAY CORRECTIONAL INSTITUTION ADMINISTRATION from the top to the lowest position.

108. Plaintiff seeks an award of damages in the amount of $1,000,000 dollars, sum same and sure against DEFENDANT nurse practioner SUSAN PETERS, as her actions dated November 28, 2017 and December 7, 2017 did violate SMITH's constitutional rights guaranteed to him under the Eighth amendment to be free from Cruel and or Unusual Punishment, as well Deliberate Indifference. Fourteenth amendment under the Equal Protection Clause, and Due Process: When Nurse Practioner PETERS administered medical treatment and evaluation on November 28, 2017 against plaintiff's verbal objections. NP PETERS, did push roughly a foreign object into the plaintiff's nostrills, and requested/agreed for plaintiff head to be forced upward from a downward position to which Captain Van Lanen directed his officer to place plaintiff into a choke hold which caused great pain and injury as plaintiff is currently receiving treatment to his neck.

-42-

NP PETERS, did admit to conspiring with a Wisconsin-DOC official currently JANE/JOHN DOES working out of Madison (WI-DOC Headquarters) prior to prescribing the two I.V Bags to which was medically unnecessary, and served as an unlawful tactic to aide security in their illegal attempts to break plaintiff of his lawful protest against the conditions of his confinement via hunger strike. NP PETERS prescribing two I.V bags to take five hours each, totalling ten hours; NP PETERS actions directly led to Deputy Warden Steve SCHUELER's actions which were illegal/unlawful on December 7, 2017, when plaintiff was immobilized by mechanical restraints under a sinister ploy of administering medical treatment to wit was medically unnecessary. Plaintiff laboratory test results did not support the ploy/dehydration, this fact further support plaintiff assertion of a conspiracy which led to malpractice as plaintiff did suffered from injury both, physically and mentally/emotionally. Defendant NP PETERS as a Wisconsin licensed medical health professional does have a sworn duty and obligation to all of her patients health, and it is medical malpractice when NP PETERS knowingly and intentionally places her patient health at risk whether it be physically and or psychologically.

109. Plaintiff seeks an award of damages in the amount of $1,000,000 dollars, sum same and sure against Health Service Unit Manager Ms. JEAN LUTSEY, as her actions did violate the plaintiff's rights guaranteed to him under the EIGHTH amendment to be free from Cruel and or Unusual Punishment, as well Deliberate Indifference. Fourteenth amendment under the Equal Protection clause, as well Due Process: when she took part in the Multi-Disciplinary Decision to take plaintiff weight against his lawful

objections understanding the plaintiff was not under a courts
order for involuntary Evaluation at the time his weight was taken
on November 30, 2017 as Nurse Jean Lutsey, is directly involved
with all Health Services management. This incident also included
immobilizing the plaintiff with the use of restraints, as plaintiff
did suffer mental and emotional anguish. Defendant PETERS, on
November 25, 2017 according to Captain CUSHING, did contact Security
Director John KIND at his home to consptre with KIND, which led
to KIND contacting Captain CUSHING to order him to use unnecessary
and excessive force on plaintiff which included placing plaintiff
into a "6" point restraint wheelchair. Nurse Jean Lutsey, was
contacted via correspondences by plaintiff many times seeking
to end the unlawful and unwritten policy that consisted of using
illegal tactics and force upon plaintiff due to his lawful peaceful
protest via hunger strike, however, Health Services Unit Manager
failed to execute her duities to intervene, and not have this
"BACK-ROOM" deal with the Warden (Eckstein) to forcibly remove
plaintiff from his assigned cell whenever hes on a hunger strike
to be taken by that force to see health Services Staff (Nurses/Doctors).
Jean Lutsey, did personally parteke in all actions and decisions
made by her staff as acurrately described herein.

110. plaintiff seeks an award in the amount of $1,000,000
dollars, sum same and sure against defendants' JANE and JOHN
DOES DOC-administrators who all partook in the plaintiff's weight
being taken on November 30, 2017. Who all participated in the
conspiracy to prescribe two I.V Bags that was medically unnecessary.
And all other constitutional violations that will be discovered
if this great court allow plaintiff to proceed on his claim

as plaintiff will expose all the identities of Jane/John DOES under the exchange of discovery material and interrogatoties.

111. Plaintiff seeks an award in the amount of $250,000 dollars, sum same and sure against defendants' Lt. Retzlaff, Lt. KOEHLER, Officers GOMM, YANG, JOHNSON, DIEDRICK, BONIS, MEYERS, GULLEY, JOHN?JANE DOES, Captain STEVENS, and Sergeant ROZMARYNOSKI, also OFFICER RETZLAFF AND SERGEANT DUPONT. As all named defendants did violate plaintiff's 1st,4th,8th, and 14th amendment(s) to the United States constitution.

112. WHEREFORE, PLAINTIFF ANTONIO MARQUES SMITH, makes a DEMAND FOR JURY herein violations set forth in this complaint.

ANTONIO MARQUES SMITH

I declare under penalty of perjury that the foregoing is true and correct.

Respectfully Submitted;

Mailing Address:

Antonio Marques Smith #275561
Green Bay Correctional Institution
Post Office Box 19033
Green Bay, WI 54307-9033

This __04__ day of OCTOBER, 2018

-45-