UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ANTONIO MARQUES SMITH,

        Plaintiff,

v.                                         Case No. 18-cv-1569-pp

JOHN KIND, JAY VAN LANEN,
CPT. CUSHING, LT. RETZLAFF,
CO BONIS, CO DIEDRICK,
CO MEYERS, CO GULLEY,
CO BOWMAN, CO MCDONOUGH,
CO YANG, SUSAN PETERS,
JEAN LUTSEY, LT. LARSON,
and JANE DOE NURSE,

        Defendants.

**ORDER SCREENING AMENDED COMPLAINT (DKT. NO. 9)**

Plaintiff Antonio Marquis Smith, an inmate at Green Bay Correctional Institution who is representing himself, filed a complaint alleging that the defendants violated his civil rights under 42 U.S.C. §1983. Dkt. No. 1. The court screened the complaint and concluded that it violated Federal Rules of Civil Procedure 18(a) and 20(a) because it stated multiple claims against multiple defendants that did not arise out of the same occurrences or did not have questions of law or fact in common. Dkt. No. 8. The court gave the plaintiff an opportunity to amend the complaint to select either one defendant and bring all his claims against that defendant or select one occurrence or series of occurrences and include all the defendants involved in that occurrence. Id. at 6. The court ordered the plaintiff to file the amended

1

complaint by August 28, 2020. Id. at 7. The court received the amended complaint on August 24, 2020. Dkt. No. 9.

## I. Federal Screening Standard

Under the Prison Litigation Reform Act (PLRA), the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court liberally construes complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

## II. Allegations in the Amended Complaint (Dkt. No. 9)

The plaintiff says that on October 6, 2017, he put the Green Bay Correctional Institution's health services unit on notice that he was engaged in a hunger strike to protest the conditions of his confinement and the "use/misuse and abuse of Solitary Confinement." Dkt. No. 9 at ¶1. The plaintiff alleges that from October 11, 2017 through November 22, 2017, he was taken to the Restricted Housing Unit (RHU) nursing station "under the veil threat of physical force against [him] should he refuse to be seen by a nurse and or doctor." Id. at ¶2. He reports that on November 23, 2017, officers (who the plaintiff does not identify) "approached [his] assigned cell located in the RHU cell No. 235 demanding that [he] be handcuffed and escorted to the nursing station to be physically evaluated by a nurse." Id. at ¶3. The plaintiff says that he refused to leave the cell, telling the officers that he was "not under a 5150 Court Order and had the right to refuse." Id. The officers asked Sgt. Fridel (not

3

a defendant) to speak with the plaintiff. Id. When Fridel asked the plaintiff why he was refusing to be seen by the nurse, the plaintiff told Fridel that the prison had not petitioned the court for an order to involuntarily evaluate him and that there was no DOC rule stating that the DOC could compel him to be seen by a nurse because he was on a hunger strike. Id. at ¶4. The plaintiff says that Fridel came back after speaking with his supervisor and told the plaintiff that Fridel and the supervisor had reviewed the hunger strike policy and asked the nurse whether there was a court order for involuntary evaluation. Id. Fridel said that because there wasn't a court order for an involuntary evaluation and no policy that directed staff to use force to take the plaintiff to see a nurse, the nurse would have to come to the cell and ask any questions she wanted to ask. Id.

The plaintiff says that on November 23 and 24, 2017, an unidentified nurse came to the plaintiff's cell asking the plaintiff if he was refusing to be evaluated. Id. The plaintiff says that "[b]oth times/days [he] refused from his cell." Id. On November 25, 2017, an unidentified nurse appeared at the plaintiff's cell asking if he would like to be evaluated. Id. at ¶5. The plaintiff again refused. Id. At approximately 12:10 p.m., defendant Supervisor Daniel Cushing came to the plaintiff's cell and allegedly said the following:

> What I'm about to say and do is bullshit but let me explain what happened. The nurse who you just refused to be evaluated by called her supervisor at home (defendant Jean Lutsey) informing her that you have refused to come out your cell for three consecutive days. Ms. Lutsey then called my supervisor at home (defendant Kind) informing him that security are not using force against you . . . to come to the

4

> nurses station to refused [*sic*] there or to be evaluated. My supervisor called to the prison to speak with me, and I informed him that there were no court order for involuntary evaluation and no written policy directing security to use force against an inmate for refusing to be seen by a nurse for any reason whatsoever. But he stated to me that he didn't care if they're [*sic*] were a court order or not, and if there were a policy or not, he still directed me to use force against you in order to get you before the nurse. So, I have two options. I can disobey my supervisor directives and be fired, or can violate your rights and used [*sic*] force and be sued. I need my job so I have to come in to get you . . .. What district will you sue me in because I can use a two day vacation?

Id. The plaintiff states he then laid on his mattress with his legs crossed at the ankles, arms behind his back and faced the wall closest to him "in a complete submissive position as directed by Cushing." Id. The plaintiff says that defendant officers Gomm, Yang, McDonough, and Bowman were present during this conversation. Id. at ¶6. He says that Gomm, Yang, McDonough, Bowman and Cushing entered the plaintiff's cell "and used physical force to take him before the prison nurse." Id. The plaintiff alleges that he "was handcuffed and sha[c]kled, then placed into a wheelchair and put into a six-point restraint." Id.

The plaintiff asserts that the next day—November 26, 2017—something similar happened. He says that Cushing came back to his cell with Diedrick, Yang, McDonough, Strean and Fridel "reiterating what his supervisor (defendant Kind) had stated to him in paragraph five." Id. at ¶7. The plaintiff asserts that all these defendants entered his cell and used physical force against him as he'd described in paragraph 6. Id.

The plaintiff says that on November 27, 2017, defendant Van Lanen, the

5

Restricted Housing Unit supervisor, came to his cell with Deidrick, Bonis, McDonough and Gulley. Id. at ¶8. Van Lanen said that he understood the plaintiff's position in refusing to come out voluntarily to be seen by the nurse without a court order and that "they're turning this into a security issue when it's a health service issue." Id. Van Lanen said, however, that he had spoken with Kind and that Van Lanen "has his orders." Id. The plaintiff states that he "laid on his stomach with his hands behind his back, legs crossed at the ankles and facing the nearest wall just as he had done" the past two days. Id. The plaintiff says that he was physically restrained and removed from the cell, placed into a six-point restraint wheelchair and taken before a nurse against his will. Id.

The plaintiff states that on November 28, Van Lanen came to his cell saying that Van Lanen had spoken with the nurse and knew that the plaintiff was asthmatic "and that incapacitating agents was a trigger that would caused [the plaintiff] to have an asthma attack." Id. at ¶9. Van Lanen told the plaintiff that Kind had given Van Lanen authorization to spray the plaintiff with incapacitating agents. Id. The plaintiff says that Van Lanen reiterated that the plaintiff had a right to refuse to be evaluated and seen by a nurse but that Van Lanen was "willing to do whatever necessary to get [the plaintiff] before the nurse without going through the same routine as they have gone through the previous three days." Id.

The plaintiff remained lying on his stomach "in the exact same submissive position as he was in the previous three days as described herein

6

when physical forced was used against his person i.e., hands behind his back, legs crossed at the an[]kles and facing the nearest wall away from the officers." Id. at ¶10. He says that Van Lanen opened the cell door trap and released a burst of incapacitating agents into the cell hitting the plaintiff with the gas on the plaintiff's body. Id. The plaintiff says that he had an asthma attack for several minutes and was unable to breathe normally. Id. at ¶11. Defendant Bonis instructed the plaintiff to strip completely naked, run his fingers through the inside of his mouth and hair, lift his testicles and spread his buttocks before he would be allowed out of the cell. Id. The plaintiff alleges that he was removed from the cell and forced into the hallway while still naked. Id. at ¶12. He alleges that Diedrick and Meyers handcuffed and shackled him. Id. The plaintiff alleges that because he had been on a hunger strike for fifty-one days, he could not walk upright, especially given the pain from the incapacitating agents and the shackles. Id. Van Lanen ordered Diedrick to place the plaintiff into a "tactical chokehold," causing the plaintiff to yell out in pain and further reducing his ability to breathe. Id. at ¶13. The plaintiff then says he was forced to talk the length of the hallway completely naked and fully exposed while other inmates stood at their cell door windows and watched him. Id.

The plaintiff says that he was taken before defendant Nurse Practitioner Susan Peters to be evaluated for the hunger strike; he says he stated that he did not wish to be evaluated. Id. at ¶14. The plaintiff states that over those objections, Peters "made several attempts" to evaluate him. Id. Van Lanen asked Peters if "she wanted [the plaintif's] head to be held up. Peters stated

7

yes, and Van Lanen directed defendant Diedrick to place yet another tactical chokehold on him." Id. The plaintiff alleges that Diedrick choked him and pulled his head backwards, that the plaintiff yelled out that he did not want to be evaluated and that Peters "placed some unknown object into [the plaintiff's] nose over his objections." Id.

The plaintiff says he was then "choke-dragged" to a cell that did not have a mattress; he was still naked. Id. at ¶15. The plaintiff asserts that when defendant Lt. Retzlaff conducted a security wellness round of inmates who were on suicide watch or control status, the plaintiff asked for clothing, a mattress, bedding and hygiene items. Id. Retzlaff responded that while Retzlaff had "the express authority to remove [the plaintiff] from his control status that it was Van Lanen's unit and it was Van Lanen who had placed [the plaintiff] on control status." Id. The plaintiff relates that Retzlaff told him that "since [the plaintiff] had not been disruptive and had done nothing wrong," Retzlaff would speak with Van Lanen to get the plaintiff some clothing, a mattress and the plaintiff's property (including his hygiene items). Id. The plaintiff asserts, however, that Retzlaff never returned, and the plaintiff "remained in a cold cell in a winter month with no clothing for over 24 hours with a glass cell door where inmates and staff passed by making homosexual remarks as it related to [the plaintiff's] nakedness." Id.

The plaintiff contends that Bonis told him that Van Lanen directed Bonis to fabricate a conduct report to justify using incapacitating agents on the plaintiff. Id. at ¶15. Bonis also told the plaintiff "that Van Lanen had falsely

8

created a story that the reason why [the plaintiff] was sprayed with incapacitating agents was because [the plaintiff] had refused a cell search." Id. Bonis told the plaintiff that "the use of incapacitating agents couldn't be used against inmates under circumstances it was used on [the plaintiff]." Id. The plaintiff says that Bonis told the plaintiff that "he would tell the truth when asked by a higher authority as to the truthfulness of the allegations giving rise to the conduct report." Id.

The plaintiff had a hearing on the allegedly fabricated conduct report and called Bonis, Meyers, and Diedrick as witnesses. Id. at ¶16. According to the plaintiff, "[t]he prison claimed that Bonis was not on duty the day of the hearing, and unable to attend." Id. Meyers and Diedrick attended and the plaintiff says that "both admitted that the allegation was false regarding them being present at my assigned cell to perform a cell search and that [the plaintiff] had refused, and that refusal was the reason why [the plaintiff] was sprayed with gas." Id. The hearing officer, defendant Lt. Larson, stated he would not make a decision until he spoke with Van Lanen and Kind. Id. Larson ultimately "returned with a guilty decision" even though the plaintiff says that he had not violated any of the alleged rules and that two officers who were present at the incident had confirmed that. Id. The plaintiff seeks $100,000 in punitive and compensatory damages from each defendant. Id. at 4.

**III. Analysis**

   A. <u>Eighth Amendment Excessive Force Claims</u>

The plaintiff claims that between November 25 and November 28, 2017,

9

Case 2:18-cv-01569-PP-NJ   Filed 11/24/20   Page 9 of 18   Document 10

various defendants used excessive force against him in violation of his Eighth Amendment rights. He says that the following corrections officers used excessive force to extract him from his cell to take him to the nurses' station:

    on November 25, defendants Yang, Bowman and McDonough;

    on November 26, Diedrick, Yang and McDonough;

    on November 27, Diedrick, Bonis, McDonough and Culley; and

    on November 28, Bonis, Diedrick and Meyers.

Dkt. No. 9 at ¶¶6-13. The plaintiff also claims that on November 25 and 26, the corrections officers acted under Cushing's direction and that on November 27 and 28 the officers acted under Van Lanen's, and that the ultimate orders to use force to take him to the nurses' station came from Jean Lutsey, the health services unit manager, and John Kind, the security director. Id. Additionally, the plaintiff claims that Nurse Practitioner Peters ordered authorized Van Lanen to use excessive force when she had him place the plaintiff in a chokehold so she could obtain a nasal swab. Id. at ¶14.

    A prison official violates the Cruel and Unusual Punishments clause of the Eighth Amendment where he or she uses force "'maliciously or sadistically to cause harm'" instead of applying the force "in a good-faith effort to maintain or restore discipline." Gomez v. Randle, 680 F.3d 859, 864 (7th Cir. 2012) (quoting Hudson v. McMillian, 503 U.S. 1, 6-7 (1992)). A "plaintiff must establish that the prison officials acted wantonly; negligence or gross negligence is not enough." Id.

    The plaintiff acknowledges that he was refusing to leave his cell to

10

submit to a medical exam. Dkt. No. 9 at ¶¶6-9. At that point, the plaintiff had been on hunger strike for over a month. Id. at ¶¶2-3. "Prison administrators have a right and a duty to step in and force an inmate to take nourishment if a hunger strike has progressed to the point where continuation risks serious injury or death." Freeman v. Berge, 441 F.3d 543, 546-47 (7th Cir. 2006). That duty requires a medical examination to determine if intervention, such as force-feeding, is necessary. Manhandling and restraining the plaintiff to get him to comply with a medical exam does not, on its own, rise to the level of excessive force without a showing that the defendants were acting sadistically or maliciously. See Guitron v. Paul, 675 F.3d 1044, 1046 (7th Cir. 2012) ("Custodians must be able to handle, sometimes manhandle, their charges, if a building crammed with disgruntled people who disdain authority . . . is to be manageable.")

For the incidents on November 25, November 26 and November 27, the plaintiff alleges that the officers used force to place him in restraints and a wheelchair and to take him to the nurses' station. Dkt. No. 9 at ¶¶6-8. The plaintiff does not allege that he suffered any physical injury as a result of the officers forcibly taking him to the nurses' station on those days. While alleging a significant injury is not required "in order to have a good claim under the Eighth Amendment . . . . minimal force is not actionable." Guitron, 675 F.3d at 1046. At most, the plaintiff alleges that the officers used minimal force on November 25 through November 27. The plaintiff did not physically resist the defendants when they told him they were forcibly taking him to the nurses'

11

station, but he also did not cooperate. Given the potential life-threatening nature of the plaintiff's prolonged hunger strike and the defendants' duty to make sure that intervention was not required, the amount of force the plaintiff alleges was appropriate given the circumstances. The plaintiff has not alleged any details suggesting that the officers acted maliciously or sadistically that day. The fact that defendant Cushing acknowledged that the plaintiff may sue him for forcibly taking him to the nurses' station does not show that he had a sadistic or malicious purpose. The plaintiff may not proceed on an Eighth Amendment excessive force claim against the officers involved in the cell extractions on November 25, 26 and 27—Yang, Bowman, McDonough, Diedrick, Bonis and Culley.

For Nurse Practitioner Peters, the force the plaintiff alleged she authorized was minimal and necessary to fulfill her duty to ensure the plaintiff did not need life-saving medical treatment. The plaintiff did not allege that she did or ordered anything to be done in a malicious or sadistic manner. He took issue with the fact that she had Van Lanan hold him still to take a nasal swab, but again, "an inmate conducting a hunger strike does not have a constitutionally protected right to refuse life-saving medical treatment." Owens v. Hinsley, 635 F.3d 950, 954 (7th Cir. 2011). The plaintiff may not proceed on an Eighth Amendment excessive force claim against Peters.

The events of November 28, however, are different. There the plaintiff alleges that defendant Van Lanen discovered that using incapacitating agents would trigger the plaintiff's asthma. Dkt. No. 9 at ¶9. The plaintiff alleges that

12

Van Lanen told him he was tired of having to forcibly restrain the plaintiff to take him to the nurse's station, and that defendant Kind had authorized Van Lanen to escalate by using the incapacitating agents. Id. According to the plaintiff, once he put himself into a submissive position (signaling that he was not going to come out of the cell of his own volition), Van Lanen deployed the incapacitating agent. Id.

The plaintiff has alleged that Van Lanen had a malicious and sadistic purpose behind the use of the incapacitating agent to force the plaintiff from his cell—avoiding having to restrain and transport the plaintiff. The plaintiff may proceed on an Eighth Amendment excessive force claim against Van Lanen. He may also proceed on an Eighth Amendment excessive force claim against the three officers who extracted the plaintiff from the cell after Van Lanen deployed the incapacitating agent—Bonis, Diedrick and Meyers. The plaintiff sufficiently alleged a sadistic and malicious purpose when they used a choke hold while he was having trouble breathing; when they made him walk fully nude to the nurses' station, even though he was in a weakened state and suffering an asthma attack; when Van Lanen directed Diedrick to put the plaintiff in a chokehold and when Diedrick yanked the plaintiff's head back and choked him during Peters' examination; and when they choke-dragged him to another cell after his examination. Id. at ¶¶10-15.

The plaintiff also may proceed on an Eighth Amendment claim for excessive force under a theory of supervisor liability against defendant Kind for the November 28 use of the incapacitating agent. Supervisors can be held liable

13

for constitutional violations caused by their employees where the violation happens at the supervisor's direction or with the supervisor's knowledge and consent. Hildebrant v. Ill. Dep't of Nat. Res., 347 F.3d 1014, 1039 (7th Cir. 2003). The supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." Id. The plaintiff alleged that Kind knew about and authorized Van Lanen's plan to use incapacitating agents.

The plaintiff may not proceed on Eighth Amendment excessive force claims against Lutsey and Cushing, nor against Kind for the events of November 25-27, because no constitutional violations occurred for which the staff they supervised could be held liable. Because the plaintiff does not allege any other claims against Lutsey, Cushing, Peters, Yang, Bowman, McDonough and Culley, the court dismisses them from the case.

### B. Eighth Amendment Conditions of Confinement Claim

The plaintiff also alleges that defendants Van Lanen and Retzlaff violated his Eighth Amendment rights when they placed him in a cell without a mattress, bedding, clothing or hygiene items for a full twenty-four hours in the winter. "The Eighth Amendment can be violated by conditions of confinement in a jail or prison when (1) there is a deprivation that is, from an objective standpoint, sufficiently serious that it results 'in the denial of the minimal civilized measure of life's necessities' and (2) where prison officials are deliberately indifferent to this state of affairs." Gray v. Hardy, 826 F.3d 1000, 1005 (7th Cir. 2016) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). The Seventh Circuit has "identified several situations that meet this demanding

test, including lack of heat, clothing, or sanitation." Id. The plaintiff alleges that he had just been sprayed with an incapacitating agent, was having an asthma attack and was weak from his hunger strike when Van Lanen placed him on "control status," which he asserts means he was denied bedding, clothing and hygiene items to clean off the incapacitating agent. Dkt. No. 9 at ¶15. He alleges that he asked Retzlaff for help, but that after stating that he would talk with Van Lanen, Retzlaff disappeared and never returned. Id. At this stage, the plaintiff sufficiently states an Eighth Amendment conditions of confinement claim against Van Lanen and Retzlaff.

C. Fourteenth Amendment Substantive Due Process Claim

The plaintiff alleges that Van Lanen directed Bonis to fabricate a conduct report stating that the plaintiff refused to have his cell searched, thus justifying the use of the incapacitating agent. Id. The Fourteenth Amendment prohibits state officials from depriving any person of life, liberty, or property without the due process of law. U.S. Const. Amend XIV. "[E]ven assuming fraudulent conduct on the part of prison officials, the protection from such arbitrary action is generally found in the procedures mandated by due process." Lagerstom v. Kingston, 463 F.3d 621, 623 (7th Cir. 2006). In other words, it is assumed the institution's disciplinary procedures would guard against such false accusations. However, "[i]ssuing false and unjustified disciplinary charges can amount to a violation of substantive due process if the charges were in retaliation for the exercise of a constitutional right." Black v. Lane, 22 F.3d 1395, 1402-03 (7th Cir. 1994). The plaintiff does not allege that Van Lanen had

15

Bonis fabricate the conduct report in retaliation; he alleges that Van Lanen did it to hide Van Lanen's own decision to use an incapacitating agent to force the plaintiff to go to the nurse's station. The plaintiff has not stated a substantive due process claim against Van Lanen and Bonis.

The plaintiff alleges that the complaint examiner, Larson, eventually upheld the conduct report after talking with Van Lanen and Kind. Dkt. No. 9 at ¶16. Prison officials who deny grievances "but who otherwise did not cause or participate in the underlying conduct" cannot be held liable under §1983. See Owens, 635 F.3d at 953 (citing George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007)). The plaintiff has not alleged that Larson caused or participated in the underlying conduct. The plaintiff cannot proceed on a claim against Larson and the court will dismiss Larson as a defendant.

Finally, the plaintiff names "Jane Doe Nurse" as a defendant. While there are several unnamed nurses mentioned in the complaint, the plaintiff does not specify which one he considers "Jane Doe Nurse." Nor does he include any allegations detailing what Jane Doe Nurse did or did not do. The court will dismiss Jane Doe Nurse as a defendant.

**VI. Conclusion**

The court **DISMISSES** defendants Daniel Cushing, Susan Peters, Jean Lutsey, Lt. Larson, Corrections Officers Gulley, Yang, Bowman, and McDonough and Jane Doe Nurse from the case.

Under an informal service agreement between the Wisconsin Department of Justice and this court, a copy of the amended complaint and this order have

16

been electronically transmitted to the Wisconsin Department of Justice for service on defendants John Kind, Jay Van Lanen, Lt. Retzlaff, and Corrections Officers Bonis, Meyers and Diedrick. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the amended complaint within 60 days.

The court will issue a separate order **REFERRING** this case to Magistrate Judge Nancy Joseph for pretrial proceedings.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court also advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin this 24th day of November, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**